Argued March term, 1912, before GARRETSON, STAPLETON, and KAPPER, JJ.

Ira L. Rosensen, for appellant.

Elias Rosenthal, for respondent.

STAPLETON, J.   The plaintiff in this action seeks to recover the sum of $75 paid by him on the 22d day of November, 1910, as the first installment of rent under a lease made on that day between the defendant, as lessor, and the plaintiff, as lessee, for the term of one year, at the yearly rent of $900, payable in equal monthly payments of $75 on the 1st day of each and every month.

Upon the 1st day of December, 1910, the day fixed for the commencement of the term, the plaintiff, upon seeking to obtain possession of the premises, found that they were in occupation of the defendant, through persons employed by him, or contracting with him, engaged in making substantial repairs requiring the services of painters, carpenters, and other workmen, and that materials and implements of substantial bulk cumbered the premises.   There was evidence from which the trial court could properly make the finding that this condition of affairs continued to the 10th day of December, 1910.

Upon the premises demised was a dwelling house.   No agreement existed between the lessor and the lessee in relation to the making of the repairs.   The defendant agreed to let the premises to the plaintiff on the 1st day of December, 1910.   That agreement carried with it the obligation that the lessor would by no act of his prevent the lessee from entering upon and occupying the premises on the day fixed; and upon his failure to deliver possession—his conduct alone standing in the way—the plaintiff had a right to rescind the contract and to recover from the defendant the consideration advanced.   Mansfield v. New York Central & H. R. R. Co., 102 N. Y. 205, 211, 6 N. E. 386; McGaunten v. Wilbur, 1 Cow. 257; Trull v. Granger, 8 N. Y. 115, 117; Wood v. Hubbell, 10 N. Y. 479, 487; Harris v. Greenberger, 50 App. Div. 439, 440, 64 N. Y. Supp. 136; Pough & Co. v. Cerimedo, 44 Misc. Rep. 246, 88 N. Y. Supp. 1054; Meyers v. Liebeskind, 46 Misc. Rep. 272, 91 N. Y. Supp. 725; Bailey v. Krupp, 59 Misc. Rep. 459, 110 N. Y. Supp. 994; Garrison v. Hutton, 118 App. Div. 455, 456, 103 N. Y. Supp. 265.

Judgment affirmed, with costs.

GARRETSON and KAPPER, JJ., concur.

═══════════

UNITED STATES OXYGEN CO. v. BERNARD A. BUGE, Inc.

(Supreme Court, Appellate Term, First Department.   May 7, 1912.)

1. EXECUTION (§ 34*)—SALE—LEASEHOLD.

Whether or not, under Code Civ. Proc. § 1251, part of an article as to docketing a judgment, the effect thereof as a lien on real estate, the suspending and discharging of the lien, and the satisfaction and discharge of a judgment, providing that, except as otherwise specially pro-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

vided, a docketed judgment shall for ten years be a charge on the chattels real of the judgment debtor, the judgment lien on a leasehold ceases, as soon as the lease has less than five years to run, thereafter it can be sold on execution only as personalty, so that the judgment debtor must own it at the time of the levy; sale of it on execution as real property being prohibited by section 1430, part of an article as to sale of real property on execution and redemption, providing that the term "real property," as used in the article, includes leasehold property, where the lessee or his assignee is in possession, "at the time of the sale," of at least five years unexpired term of the lease.

[Ed. Note.—For other cases, see Execution, Cent. Dig. §§ 83, 84; Dec. Dig. § 34.*]

2. LIENS (§ 1*)—NATURE AND INCIDENTS.

A lien is a holding or claim which one person has on the property of another as security for ·a judgment or some charge or debt out of that property (citing 5 Words and Phrases, 4144).

[Ed. Note.—For other cases, see Liens, Cent. Dig. §§ 1, 4, 23; Dec. Dig. § 1.*]

Appeal from Municipal Court, Borough of Manhattan, Ninth District.

Summary proceeding by the United States Oxygen Company, as landlord, against Bernard A. Buge, Incorporated, as tenant. From a final order for the landlord, the tenant appeals. Affirmed.

The opinion of Spiegelberg, J., in the court below, is as follows:

This is a summary proceeding on the part of the United States Oxygen Company to recover possession of the premises, 509 Fifth avenue, from Bernard A. Buge, Incorporated, for nonpayment of rent claimed to be due for the months from March to September, 1911. The premises in question are owned by Thomas F. Sturges and others, who in the year 1896 leased them to one Alfred Walton for a term expiring May 1, 1913. The lease was recorded on May 14, 1896. In the year 1902 Winslow E. Buzby and William A. Rees recovered in the City Court of the City of New York three judgments against Alfred Walton, each being approximately for the sum of $850. These judgments were duly docketed in the county clerk's office and executions were issued thereon to the sheriff, who, in the same year, returned them unsatisfied. By an instrument dated and executed January 23, 1905, Alfred Walton sold and assigned· his leasehold for the remainder of the term to the United States Oxygen Company, but the assignment was not recorded until February 8, 1910. On June 15, 1910, the United States Oxygen Company leased the premises, with the exception of one room, to Bernard A. Buge, Incorporated, for a term expiring April 19, 1913, which lease was recorded June 18, 1910. On January 9, 1911, executions were again issued to the sheriff on the judgments obtained in the year 1902 by Buzby and Rees against Walton, and by virtue of these executions the sheriff on March 6, 1911, sold to Buzby and Rees, who were the highest bidders, the interest which Walton had in the leasehold at the time of the entry of the judgments of 1902. On March 16, 1911, the sheriff executed a deed thereof to Buzby and Rees, who at once went into possession of the premises. Bernard A. Buge, Incorporated, the tenant herein, attorned to Buzby and Rees and received a new lease from them. The sheriff complied with the requirements of the Code of Civil Procedure contained in section 1434 ·et seq., except that he did not make out any certificates of sale, but executed and delivered a deed of conveyance to the purchasers immediately after the sale. The tenant herein, claiming that Buzby and Rees were its landlords, declined to pay the rent to the petitioner after March, 1911.

[1] The questions to be decided in this proceeding are somewhat perplexing and for a better understanding thereof it may be well to state the respective claims of the parties hereto. The tenant claims that the leasehold interest acquired by Walton from Sturges in 1896 is to all intents and purposes real

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

estate, and that, therefore, by virtue of section 1251 of the Code of Civil Procedure the judgments obtained by Buzby and Rees in 1902 became a lien thereon. The portion of that section applicable hereto reads: "Except as otherwise specially prescribed by law * * * a judgment, hereafter rendered which is docketed in a county clerk's office, as prescribed in this article, binds, and is a charge upon, for ten years after filing the judgment roll, and no longer, the real property and chattels real, in that county, which the judgment debtor has at the time of so docketing it, or which he acquires at any time afterwards, and within the ten years."

The learned counsel for the tenant argues that the sheriff had the right to sell Walton's interest in the leasehold at the time of the entry of the judgment as real estate, and convey a good title thereto to Buzby and Rees, without regard to any rights that the United States Oxygen Company may have acquired, notwithstanding the fact that long prior to the sale Walton had disposed of the leasehold. The petitioner maintains that this leasehold is not real estate, that a chattel real acquires only such characteristics of real estate as are specifically given by statute, and that article 3, tit. 2, c. 13, of the Code, which deals with the sale, redemption, and conveyance of real property, specifically excludes the leasehold in question from the designation of real property. Section 1430, being the first section of the third article, reads: "The expression 'real property,' as used in this and the succeeding article, includes leasehold property, where the lessee or his assignee is possessed, at the time of the sale, of at least five years unexpired term of the lease, and also of the building, or buildings, if any, erected thereupon." In view of this provision, the petitioner claims that the judgments of 1902 ceased to be a lien upon the chattel real as soon as it had less than five years to run. At the time of the sheriff's sale on March 6, 1911, the life of the unexpired term of the leasehold was less than three years.

It seems to be conceded that the sheriff's sale of the lease can only be upheld if the interest sold could be sold as real estate. The counsel for the tenant insisted throughout the trial and upon his brief that the sheriff was justified in selling Walton's leasehold as real estate, and as a matter of fact it was sold as such. It stands to reason that if the leasehold, at the time of the sale, was personal property, the defense must fail. At that time and for nearly six years prior thereto Walton was neither the owner nor in possession of the leasehold, and no proceedings were had to make a levy effectual as against the petitioner, who was the assignee in possession.

At common law estates for years or chattels real were but chattel interests, and as such personal property, but by statute in some states estates for years are classed as real property for some purposes. 24 Cyc. 958. The increasing importance of estates less than freehold has resulted in statutory enactments discarding the restrictions which affected them in early times (2 Reeves on Real Property, 791) and clothing estates for years with some of the elements of real estate. But an estate for years is still essentially personal property, except as modified by statute. Despard v. Churchill, 53 N. Y. 192, 199; People v. McAdam, 84 N. Y. 287, 295. As said in Broman v. Young, 35 Hun, 173, "its intrinsic quality probably remains as at common law, and as such is a chattel interest, and its nature that of a chose in action." In what manner, to what extent, and for what purpose the character of chattels real has been changed from personal property to real estate must be sought in the statutory enactments. Thus we find that the docket of a judgment binds chattels real (Code, § 1251, supra), while, on the other hand, a lease of at least five years unexpired term can be sold as real estate (Code, § 1430, supra). The recording act excludes leases of less than three years from its operation. Real Property Law (Consol. Laws 1909, c. 50) § 290, subd. 1. And while estates for years are taxable as personal property under the Transfer Tax Act (Matter of Althause, 63 App. Div. 252, 71 N. Y. Supp. 445, affirmed 168 N. Y. 670, 61 N. E. 1127), rents reserved on leases for over 21 years are made taxable like real estate (Laws 1846, c. 327). It is apparent that some of the elements of real estate attach to chattels real of varying terms and for various purposes.

I cannot, therefore, agree with the contention of the learned counsel for the tenant that the law at present treats a chattel real to all intents and

purposes as real property. The above observations lend force to the contention of the petitioner that under section 1251 of the Code a judgment binds a chattel real in the same manner as real property only so long as the chattel real has the character of real property, and as section 1430 eliminates a chattel real of less than five years' duration at the time of sale, consequently the leasehold in question, which had in 1911 less than three years to run, was at that time no longer subject to the lien of the judgment of 1902. Reliance is placed on the case of Taylor v. Wynne, 8 N. Y. Supp. 759,[1] and 10 N. Y. Supp. 644,[2] decided by the General Term of the Supreme Court, Second Department, which unqualifiedly holds that a judgment is not a lien upon the judgment debtor's interest in an unexpired term of a lease which has only two years to run. Wynne was the lessee of the premises for a term of five years beginning April 1, 1885. A transcript of a judgment obtained against him was filed in the office of the clerk of Westchester county on March 26, 1888, and on April 4, 1888, he assigned the lease to his wife. On May 25, 1888, an execution was issued against Wynne, and upon the sale under this execution Taylor became the purchaser of Wynne's leasehold interest and subsequently commenced proceedings of dispossession. The opinion of the court (8 N. Y. Supp. 759) is as follows: "Only two years of the lease were yet to run. It was, therefore, not real estate (Code, § 1430), and the judgment docketed on March 26th was not a lien upon it. It follows that the assignment of the lease by defendant on April 4th carried a clear title to the assignee. The execution against the defendant was not issued till May 25th. The lease was not at that time the property of the defendant in the execution, was not subject to the lien of the judgment, and the attempted sale upon the execution was ineffectual to vest any title in the vendee. All these facts appeared in the petition, which was properly dismissed. Order affirmed, with $10 costs and disbursements." The case came again before the court on reargument, when the following opinion was delivered (10 N. Y. Supp. 644): "By section 1430 of the Code, 'real property' is said to include leasehold property, where there is at least five years unexpired of the lease. In the present case there was but two years unexpired of the lease when the judgment was docketed. The lease not being 'real property,' the judgment was not a lien upon it. The assignment to his wife conveyed it free from the lien of the judgment, and when the execution was afterwards issued against the husband the lease was no longer his property, and a sale upon an execution against him carried no title to the purchaser. Another defect upon the face of the petition was that the judgment was not stated to be for $25, exclusive of costs. We are still of the opinion expressed on the former appeal. Motion for reargument denied, with $10 costs and disbursements."

The petitioner's contention also finds support in 1 Black on Judgments, § 429, and in the note in 2 Reeves on Real Property, 792, where it is said: "A chattel real—estate for years—could be sold on execution, by virtue of the Revised Statutes of 1830. But by Laws 1837, c. 462, § 1, which is now Code Civ. Pro. § 1430, only estates for years of which there are still at least five years yet unexpired can be so taken and sold." The provisions of section 1251 apply only except as "otherwise specially prescribed by law," and it may be plausibly argued that this qualification removes the seeming conflict with section 1430. I do not believe that the restricted meaning should be given to these words which the learned counsel for the tenant insists upon in his brief, where he states that the exception "refers to the administration of an estate in the Surrogate's Court and to the provisions of the same article where security can be put up or filed and remove the lien of the judgment on a special application to the court." The phraseology is plain and easily understood, and means exactly what it says, viz., that where other provisions are made by law the provisions of the section shall not apply. Thus a judgment originally recovered in the Municipal Court of the City of New York for less than $25 does not bind real property. Municipal Court Act (Laws 1902, c. 580) § 263.

[1] Reported in full in the New York Supplement; reported as a memorandum decision without opinion in 55 Hun, 610.

[2] Reported in full in the New York Supplement; reported as a memorandum decision without opinion in 57 Hun, 590.

I do not think it is necessary, in order to harmonize section 1251 with section 1430, to go to the length of holding that a judgment binds a chattel real only so long as it has at least five years to run. Article 3 of title 1 of chapter 11 of the Code, of which section 1251 is a portion, contains the statutes in relation to docketing a judgment, the effect thereof as a lien upon real property, the suspending and discharging of a lien, and the satisfaction and assignment of a judgment, but the manner of the enforcement of the lien must be sought elsewhere. Section 1405 et seq. deal with the sale of personal property by the sheriff on execution, and section 1430 et seq. with that of real property. The leasehold in question could not be sold on execution as personal property, for the reason that it no longer belonged to the judgment debtor, nor could it be sold as real property, as section 1430 specifically forbids the sale of a leasehold of less than five years' duration. A levy by the sheriff is a prerequisite to a sale on execution. In the case of real estate an actual going or taking into possession is not necessary; the filing of the notice according to the statute takes its place. In the case of personal property, however, the thing to be sold on execution must be levied upon while owned by the judgment debtor. If the judgment debtor at the time of the levy had been the owner of this leasehold, there is little doubt in my mind that his interest therein could have been sold on execution as personal property. But such was not the case.

[2] I am of opinion that there is no difficulty in giving full force to the language of section 1251 and at the same time in carrying into effect the provisions as to the sale of property on execution. A lien is a holding or claim which one person has upon the property of another as security for the judgment or some charge or debt out of that property. See definitions in Bouvier's Law Dictionary and 5 Words and Phrases, 4144. It can be enforced in other ways than by the sale of the property on execution. Section 1251 grants the lien, but does not say how it shall be enforced. By virtue of section 1430 a judgment lien on a leasehold for a term of five years or more can be enforced by execution sale of real property, and a leasehold of a lesser term which at the time of the levy was owned by the judgment debtor can be sold as personal property. In this case, however, although the judgment creditor has an enforceable lien against the leasehold in question, it cannot be enforced by sale on execution. He is relegated to other proceedings which readily suggest themselves. As already indicated, the lease was sold as real property, and the learned counsel for the tenant in his very able and elaborate brief argues that such a course was justified by the law of this state. After a careful examination of the authorities cited by him, I have come to the conclusion that they do not support his view, except by some disconnected dicta and words wrested from the context.

The learned counsel for the tenant bases his plea for regularity of the sale of the leasehold as real property upon an opinion rendered by the late Judge MacAdam in 1883, while a member of the old Marine Court, in the case of Mitnacht v. Cocks, 65 How. Prac. 84. I fail to see the application of that case to the facts under consideration. In the Mitnacht Case the interest of the tenant Cocks in two leases which had but a few months to run was sold under an execution issued on a judgment entered against him. The sheriff sold the leasehold interest as personal property to the petitioner, who thereupon instituted summary proceedings against Cocks as a holdover under section 2232 of the Code. The court held that section 2232 prescribed a sale of the leasehold interest as real property, and although the sale of the leasehold interest as personal property was legal, the petitioner could not invoke the aid of the statute which in express terms is limited to real property. Judge MacAdam did not pass upon the question whether the lease in that case could have been sold as real estate and I do not apprehend that the argument is advanced that a lease for a month or two can be so sold. The proceedings in this case are not instituted under section 2232, but under section 2231, subd. 2.

In the case of O'Rourke v. Cooper Co., 11 N. Y. Civ. Proc. R. 321 (decided 1886 by the Special Term of the New York Superior Court), it appeared that Cooper, being the lessee of certain premises for a term of ten years from May 1, 1879, assigned the lease to the Cooper Company in October, 1883.

On July 3, 1883, one Flagg obtained a judgment against Cooper. The sheriff under execution issued in the year 1886 sold to O'Rourke the interest which Cooper had in the above lease on July 3, 1883. The Cooper Company, having leased a portion of the premises to the Nippon Mercantile Company, brought summary proceedings against it upon its refusal to pay rent, whereupon O'Rourke obtained in the Superior Court a temporary injunction staying the dispossess proceedings. These facts bear a strong similarity to this case, but the opinion rendered by Judge Ingraham on the motion to continue the injunction does not support the proposition of the tenant herein. The interest of Cooper was sold as personal property, but it does not appear what proceedings were taken by the sheriff on the strength of which the plaintiff obtained a valid title to the lease by the sale under the execution, as found by the court. Judge Ingraham says: "The sale appears to be regular, and, so far as appears, the sale was made in accordance with the provisions of the Code for the sale of personal property. Article 3, §§ 1430 to 1478, do not apply to a sale under this execution, because at the time of the sale they had less than three years to run." After quoting the language of section 1430, the learned judge continues: "The leasehold interest not being real property, it must be sold as personal property, and upon the sale under the execution the property sold vested immediately in the purchaser." From the final decree entered in that case an appeal was taken, and the judgment was reversed on the specific ground that O'Rourke had not gone into possession of the property. O'Rourke v. Cooper Co., 54 N. Y. Super. Ct. 389. However, considerable doubt was expressed as to the correctness of the decision of the court below.

The view of the General Term is more fully stated in the case of O'Rourke v. Brown, 54 N. Y. Super. Ct. 385, in which the facts were substantially the same as in the Cooper Case. On page 387 of 54 N. Y. Super. Ct., Sedgwick, C. J., writing for the court, says: "The corporation, then, being in possession of the lease, or the term, whichever it may be, is the landlord of the defendants and remains so until the plaintiff, *if he has such a cause of action,* is put in actual possession. This has not been done in this case, and therefore rent is not due to the plaintiff. If the lease or the term be looked at as personal property, the result is not different. The sheriff had not made any levy actually, or even a constructive levy, if that be possible, *and his sale could not give any possession of what was pretended to be sold to the purchaser.*" Except for a similarity of the facts, the O'Rourke Cases are authorities against, not for, the claim of the tenant herein.

The learned counsel for the tenant lays hold of some remarks occurring in opinions to the effect that chattels real are subject to the lien of a judgment and capable of being sold on execution. This is undoubtedly true as a general proposition, but such statements are not authority for the tenant's claim that the sale on execution of a leasehold of less than five years, which was no longer the judgment debtor's property at the time of the levy, was properly conducted as a sale of real property. Even at common law, where an estate for years was regarded as only a chattel interest, and therefore not bound by the lien of a judgment, it could be levied upon and sold under execution, but only like any other species of personal property. 1 Black on Judgments, § 429.

It is sought to uphold the regularity of the proceedings resulting in the sale of the leasehold in question by the claim that the restriction in section 1430 as to a five-year lease applies only to the right of redemption; in other words, that upon a sale of a chattel real which has more than five years to run the sheriff must execute certificates of the sale under section 1438, and must await the expiration of the period of the right of redemption, viz., 15 months, before he is permitted to execute a deed of the property sold (section 1471), but that on the sale of other chattels real, although all the other formalities of a sale of real property must be observed, the conveyance must be made at once. In view of the language of section 1430, this contention is rather startling. Sections 1430 to 1478 comprise article 3 of title 2 of chapter 13 of the Code, the heading of which reads: "Sale, Redemption and Conveyance of Real Property; Rights and Liabilities of Persons Interested." Where is the authority for eliminating the words "sale and conveyance,"

so as to make the heading read: Redemption of Real Property? The history of section 1430 does not bear out such a claim. By the Revised Statutes of 1829 the lien of a judgment was extended to chattels real without, however, giving the right of redemption in case of the execution sale of a chattel real, no matter how valuable the leasehold or how long the term. Westervelt v. People, 20 Wend. 416. To remedy such hardship, the Legislature in 1837 enacted the following law (chapter 462): "So much of title fifth, chapter sixth, part third of the Revised Statutes, as relates to the sale and redemption of real estate, which shall be sold under execution, shall be applicable to the sale and right of redemption of leasehold property, where the lessee or the assignee of the lessee, shall be possessed of at least five years unexpired term of the lease, and also of any building or buildings that may be erected thereon."

This statute, with verbal changes, has become section 1430 of the Code, with the significant addition, however, of the words "at the time of the sale," preceding the phrase "of at least five years unexpired term." Reference to the first edition of the Revised Statutes, which were in force in the year 1837, shows that the fifth title of the sixth chapter of the third part contains the provisions relating to executions and the duties of officers therein and is divided into four articles (2 R. S. 363 et seq.) which deal with (article 1) general provisions; (article 2) executions against property; (article 3) remedies for failure of title to real estate sold by execution, and to enforce contribution between several owners of leases subject to the same judgment; (article 4) executions against the person. The sections of the second article, dealing with executions against real property, do not mention chattels real, thus making the provisions in regard to executions against personal property applicable to terms for years. Westervelt v. People, supra.

This was changed by the statute of 1837, which makes all the provisions of the Revised Statutes relating to the sale and redemption of real estate applicable to chattels real of five years duration. The statute neither limits the provisions, in their applicability to chattels real, to the redemption thereof, nor does it extend them to all chattels real. The result of this legislation is that leaseholds of less than a five-year term are, in case of a sale on execution, classed now as they were before 1837, namely, as personal property. Surprising as it may seem, the argument is made that because of the fact that leaseholds with less than five years unexpired term are not subject to redemption, and therefore sections 1444 to 1472 do not apply to such leaseholds, the other sections of article 3, in regard to the sale, redemption, and conveyance of real property, do apply, notwithstanding the restriction of all the sections to leasehold property of at least five years unexpired term. Such a claim bears its own refutation.

I do not believe that there is any warrant in law for the proceedings taken in this case in connection with the sale of this leasehold, and I am of the opinion that the sheriff's deed did not give the purchasers on execution any right or title affecting the petitioner herein. It is undoubtedly correct that the sheriff has the right to sell a leasehold of less than five years term and must give immediate possession thereof to the purchaser. But the property thus sold is personal property, and not real property. It has been intimated that the procedure in this case is sanctioned by a well-known text-writer, who says: "Upon the sale of any premises, if they be of leasehold property, where the lessee or assignee of the lease shall not be possessed of at least five years unexpired term of the lease at the time of the sale, there will be no right of redemption, and the sheriff must execute a conveyance thereof to the purchaser." Crocker on Sheriffs, § 504. The learned author does not say that such a leasehold is real property, and must be sold as such, and he is undoubtedly correct that upon a sale of such a leasehold, which is personal property, there is no right of redemption. I have already pointed out that, when a leasehold is personal property, it can only be sold on execution if owned by the judgment debtor.

In conclusion it may not be amiss to observe that it should be borne in mind that this is a proceeding between a landlord and his tenant. The tenant resists the enforcement of the rights of his former landlord and has accepted a new landlord. "While there is no feudal fealty between the Amer-

ican landlord and tenant of to-day, yet there is tenure and privity of estate and a mutuality of interest—a fealty of relationship, if it may be so called—which requires the tenant to be faithful to the interests of his landlord." 2 Reeves on Real Property, § 598. Of course, I am aware that the estoppel of a tenant to deny his landlord's title is subject to qualifications. But it seems that the tenant herein was more than anxious to accept the new landlord, when his duty to the former landlord might well have induced him to resist the claims of the newcomer, instead of making common cause with him against his landlord. Whether the tenant's actions were such as to amount to a breach of duty towards his landlord, and prevent him from raising the defenses herein set up, is not necessary to decide.

The petitioner is entitled to a final order awarding to it the possession of the premises.

Argued February term, 1912, before SEABURY, GUY, and BIJUR, JJ.

Isaac Newton Williams, of New York City, for appellant.
Alexander S. Bacon, for respondent.

PER CURIAM. Final order affirmed, with costs, upon the opinion of Mr. Justice Spiegelberg in the court below.

---

In re WEST 163d STREET IN CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. June 28, 1912.)

1. MUNICIPAL CORPORATIONS (§ 466*)—ASSESSMENT OF BENEFITS FOR STREET OPENING—OBLIGATION OF COMMISSIONER OF ASSESSMENT.

The commissioner of assessment for benefits for the opening of a street, though under Greater New York Charter (Laws 1901, c. 466) § 973, as amended by Laws 1910, c. 336, § 2, one of the commissioners making the awards for the land taken for the street, acts independently of the commissioners, and he must apportion the awards among the parcels in proportion to the benefits, and an assessment on the remaining land of one whose land has been taken for the street must be the same as if none of his land had been taken.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1109; Dec. Dig. § 466.*]

2. MUNICIPAL CORPORATIONS (§ 508*)—ASSESSMENT FOR BENEFITS FOR STREET OPENING—REVIEW.

Where the commissioner of assessment for benefits for opening a street found that the remaining land of one whose land was taken for the street has a new frontage on the street, so that each of his remaining lots is benefited by the improvement, the court, on appeal from the refusal to confirm his report, cannot determine that the lots were not benefited by the amount for which they were assessed, or that the commissioner proceeded on a wrong rule; the record merely presenting the assessments.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1181, 1182; Dec. Dig. § 508.*]

Appeal from Special Term, New York County.
Proceedings by the City of New York to acquire title to West 163d Street, between Amsterdam Avenue and St. Nicholas Avenue, in the Twelfth Ward, Borough of Manhattan. From an order refusing to confirm the report of the commissioner of assessment, and re-